UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

WISCONSIN JAM PRODUCTIONS, INC.
1711 S. Hastings Way
Eau Claire, WI 54701

and

ROCK JAM, LLC
1065 Hwy 6 & 50
Mack, CO 81525

COMPLAINT

Case. No. 11 CV 107

**Plaintiffs**

v.

BOBBY L. WILLIS
650 West Main St., Suite C
Farmington, NM 87401

and

WESTERN SLOPE COUNTRY FEST,
LLC
33 Inverness Place
Durango, CO 81301

**Defendants**

Plaintiffs, Wisconsin Jam Productions, Inc. and Rock Jam, LLC, by their attorneys, Bakke Norman, S.C., by Peter M. Reinhardt, and Coleman and Robinson, LLC, by Joseph Coleman, complain of Defendants, Bobby Willis and Western Slope Country Fest, LLC, as follows:

1

## PARTIES

1. Plaintiff, Wisconsin Jam Productions, Inc., is a Wisconsin business corporation, with its principal place of business located at 1711 S. Hastings Way, Eau Claire, WI 54701.

2. Plaintiff, Rock Jam, LLC, is a Colorado limited liability company, with its principal place of business located at 1711 S. Hastings Way, Eau Claire, WI 54701.

3. Defendant, Bobby L. Willis, is an adult resident of the State of New Mexico. Upon information and belief, he resides at 650 W. Main St., Suite C, Farmington, New Mexico.

4. Defendant, Western Slope Country Fest, LLC, is a Colorado limited liability company with its principal place of business located at 33 Inverness Place, Durango, CO 81302. Its registered agent is Timothy J. Cooney.

## NATURE OF ACTION

5. This case arises out of Plaintiffs' negotiations with Defendant Willis to sell Plaintiffs' music festivals in Grand Junction, Colorado, to Defendant Willis, as well as contracts executed by the parties as part of the negotiations. Plaintiffs contend that Defendant Willis breached his obligations under the parties' Confidentiality and Non-Disclosure Agreement by obtaining confidential information from Plaintiffs, under the guise and pretext of negotiating a purchase, and then using this confidential information to organize and operate his own competing music festival, under the name Bobby's Birthday Bash, on the same dates and at the same general location as Plaintiffs' music festival.

6. Plaintiffs claim that Defendant breached the terms and conditions of the parties' Confidentiality and Non-Disclosure Agreement; misappropriated Plaintiffs' trade secrets; willfully and deliberately interfered with Plaintiffs' prospective contracts with sponsors; and intentionally misrepresented his intent and ability to purchase Plaintiffs' assets.

2

7. This case also involves Defendants' intent and actions to destroy competition and create a monopoly in the music festival market by offering free admission to their music festivals, resulting in an anticipated 8 to 12 million dollar loss to Defendants, according to their own admissions. This conduct constitutes predatory pricing practices and concerted action in restraint of trade, as well as anticompetitive conduct with the intent to monopolize a market, all in violation of the Sherman Act, 15 U.S.C. §§1 and 2.

## JURISDICTION AND VENUE

8. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331, as this case involves federal questions under 15 U.S.C. § §1 and 2.

9. This controversy is subject to a forum selection clause in the Confidentiality and Non-Disclosure Agreement that provides, in pertinent part, as follows:

> This Agreement shall be construed, performed and enforced in accordance with, and governed by, the internal laws of the State of Wisconsin, without giving effect to the principles of conflicts of law thereof, and each party consents to personal jurisdiction in such state and voluntarily submits to the jurisdiction of the courts of such state in any action or proceeding relating to this Agreement.

10. Venue is proper in this judicial district pursuant to the forum selection clause set forth in the Confidentiality and Non-Disclosure Agreement

## GENERAL ALLEGATIONS

11. Plaintiffs are interrelated businesses that, collectively, organize and operate annual, multiple day music festivals in Colorado.

12. Plaintiffs have twenty-three years of experience, knowledge and expertise in organizing and operating such music festivals. During this twenty-three year period, Plaintiffs have acquired valuable propriety information which enables them to profitably put on music festivals on a regular, annual basis in Colorado.

13. Plaintiffs' music festivals in Colorado are Country Jam and Rock Jam and are held on concert grounds located within Mesa County, CO., approximately twenty miles outside of Grand Junction, Colorado.

14. The Colorado Country Jam festival features country music artists and is historically held in June of each year, traditionally the last full weekend in June. The 2011 Country Jam is scheduled for June 23 through June 26. The Colorado Rock Jam festival is currently held in August of each year, and features rock music artists.

15. Planning and organizing these music festivals involves a full time staff and is a year round operation. Advance ticket sales for Country Jam for 2011, sold in 2010, are approximately

$1.2 million, and advance ticket sales for Rock Jam for 2011, sold in 2010, are approximately $250,000. Many sponsors and other contracts are routinely entered into with the same entities year after year. Having access to sponsor contracts and ticket pricing and sales is a valuable proprietary asset of Plaintiffs.

16. In 2010, Defendant Willis expressed an interest in purchasing Plaintiffs' music festivals in Colorado, and represented he had the financial ability to close a cash purchase in the amount of $8.25 million dollars.

17. On September 16, 2010, the parties entered into a Letter of Intent, a copy of which is attached as Exhibit A.

18. Paragraph 2 of the Letter of Intent stated: "Willis intends to purchase the Assets for a cash purchase price of $8.25 million."

19. At or about the same time, in September of 2010, Plaintiffs entered into a Confidentiality and Non-Disclosure Agreement with Defendant Willis, a copy of which is attached hereto as Exhibit B.

4

20. The purpose of the Confidentiality and Non-Disclosure Agreement was to allow Defendant Willis access to certain confidential and proprietary business information to evaluate and contemplate the proposed transaction. The Confidentially and Non-Disclosure Agreement was an absolute condition precedent to allowing Defendant Willis access to such confidential and proprietary business information because the parties recognized that such information, if misused or wrongfully disseminated, would cause material financial and other harm to the Plaintiffs.

21. Upon information and belief, prior to September of 2010, Defendant Willis did not have any knowledge, experience or expertise regarding the actual organization or operation of music festivals and the related business aspects of safety and profitably operating a large music festival.

22. In the Confidentiality and Non-Disclosure Agreement, Defendant Willis agreed that he would not use the confidential information, or cause it to be used, for the benefit of Willis or any other third party, or in a manner adverse to, or to the detriment of, Plaintiffs.

23. Based on the Confidentiality and Non-Disclosure Agreement, Plaintiffs provided written, confidential materials to Defendant Willis, including, but not limited to, all of their contracts with sponsors, all of their contracts with artists/entertainers, budgets, expense information, tax returns, profit and loss statements, pricing information, sales figures, equipment lists, advertising information, and permit information. The misuse of this information by Defendant Willis violating the Confidentiality and Non-Disclosure Agreement would afford Defendant Willis a wrongful and undue advantage in starting a competitive music festival and as to interfering with Plaintiffs' prospective business advantages.

24. Based on the Confidentiality and Non-Disclosure Agreement, Plaintiffs also provided verbal information to Defendant Willis and access to Plaintiffs' general manager, from

5

which Defendant Willis learned all of the material aspects of the organization and operation of Plaintiffs' music festivals, information which would enable someone to benefit from Plaintiffs' twenty-three years of efforts and education as to how to put on a profitable music festival.

25. Between October and November of 2010, Defendant Willis continuously changed the proposed terms of the transaction, contrary to the Letter of Intent, and eventually informed Plaintiffs that he would not make a cash purchase of the festival assets, but instead would exchange land in New Mexico he represented was worth at least the $8.25 million purchase price.

26. An Asset Purchase Agreement was never finalized based on Defendant Willis' failure and refusal to provide any information verifying his representations regarding the value of the land in New Mexico.

27. Upon information and belief, on November 30, 2010, Defendant Willis formed Western Slope Country Fest, LLC, for the purpose of using confidential and trade secret information of Plaintiffs to compete with Plaintiffs.

28. Since December of 2010, Plaintiffs have made one verbal request and two written requests to Defendant Willis, through his counsel, to return confidential, written materials provided to him, and Defendant Willis has failed and refused to return said materials.

29. In December of 2010, within several days after the parties' negotiations ended in an unsuccessful manner, Defendant Willis publically announced his intention to operate a competing country music festival, free of charge to patrons, at the same exact time and in the same general location as Country Jam, using the name "Bobby's Birthday Bash."

30. "Bobby's Birthday Bash" will be in direct competition with Country Jam and will create health and safety concerns because of traffic problems associated with attempts to operate large, 20-30,000 Country Jam attendance estimates, and unknown attendance at a "free" Bobby

Birthday Bash event within a mile or two of each other in an area with a population base in the 100's of people within the immediate area of the competing festivals.

31. In his announcement, Defendant Willis stated, in reference to Country Jam, "We're going to blow them away." He also stated, "You can put my name on it. This is intentional." Willis also said he stood to lose $8 million to $12 million of his own money the first year, but it's worth it to make a statement about keeping concert revenue local. Willis also publically stated that he was financially capable of performing his threats against Country Jam.

32. In December of 2010, or before, Defendant Willis solicited one of Plaintiffs' major, media sponsors, with whom Plaintiffs had a three year relationship, Moose Country 100.7. Moose Country has indicated it will not be a sponsor of Country Jam for 2011. Defendant Willis' conduct is continuing to hinder efforts to finalize some of Plaintiffs' traditional sponsor contracts.

33. Upon information and belief, Defendant Willis and Defendant Western Slope Country Fest, LLC, have signed country music artists for "Bobby's Birthday Bash", and they are publicizing their plan to present their music festival in a manner and location analogous to a business plan based on the confidential business information provided to him pursuant to the Confidentiality and Non-Disclosure Agreement.

34. Since December of 2010, Defendant Willis has continued to make public announcements regarding "Bobby's Birthday Bash," including statements on February 4, 2011, in which he named artists and entertainers that he claims will perform at his music festival, and indicated that general admission for patrons would be free of charge. On February 8, 2011, Defendant Willis created a web-site, Bobbysbirthdaybash.com, in which he continues to announce his intention to compete, including to operate a competing rock festival, and identified

7

specific artists for his country music festival that will take place from June 23, 2011, through July 25, 2011.

35. Defendants have used and are continuing to use the confidential verbal and written information provided to him by Plaintiffs to plan and organize "Bobby's Birthday Bash."

36. At all relevant times, Defendants have acted maliciously towards Plaintiffs or in an intentional disregard of the rights of Plaintiffs.

## FIRST CLAIM FOR RELIEF: BREACH OF CONTRACT

37. Plaintiffs re-allege and incorporate paragraphs 1 through 36 of this Complaint.

38. By his actions described herein, Defendant Willis has breached his contract with Plaintiffs by using or causing the confidential information to be used for his benefit and/or in a manner adverse to, or to the detriment of, Plaintiffs.

39. Plaintiffs have suffered pecuniary loss and harm as a result of Defendant Willis' breach of contact, and will continue to suffer pecuniary loss and harm in the future.

40. Pursuant to the terms and conditions of the Confidentiality and Non-Disclosure Agreement, Defendant Willis agreed that his failure to perform any obligation or duty he agreed to perform under the agreement would cause irreparable harm to Plaintiffs.

41. Defendant Willis' breach of the Confidentiality and Non-Disclosure Agreement has caused and will continue to cause irreparable harm unless enjoined, and Plaintiffs do not have an adequate remedy at law.

42. According to the terms and conditions of the Confidentiality and Non-Disclosure Agreement, Defendant Willis is obligated to pay Plaintiffs' costs and attorney fees incurred as a result of Defendant Willis' breach of contract.

## SECOND CLAIM FOR RELIEF: MISAPPROPRIATION OF TRADE SECRETS WIS. STAT. § 134.90

43. Plaintiffs re-allege and incorporate paragraphs 1 through 42 of this Complaint.

44. Plaintiffs provided Defendant Willis with trade secret information, including, but not limited to, the written materials described in paragraph 23 hereof.

45. Defendants misappropriated Plaintiffs' trade secrets by using the trade secrets after acquiring the trade secrets under circumstances giving rise to a duty to limit the use of the trade secrets.

46. Pursuant to Wis. Stats. §134.90, Plaintiffs are entitled to injunctive relief, as well as money damages equal to Plaintiffs' actual loss or Defendants' unjust enrichment.

47. Defendants' conduct, as described herein, was malicious and willful. As a result, Plaintiffs are entitled to statutory, punitive damages.

## THIRD CLAIM FOR RELIEF
## INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS

48. Plaintiffs re-allege and incorporate paragraphs 1 through 47 of this Complaint.

49. At all relevant times, Plaintiffs had prospective contractual relationships with various sponsors of Country Jam, including, but not limited to, Moose Country Radio station, Boot Barn, and Country Club Liquors.

50. Defendant Willis interfered with Plaintiffs' prospective contractual relationships with said sponsors.

51. The interference on Defendant Willis' part was intentional.

52. Defendant's interference has caused pecuniary loss and harm to Plaintiffs.

## FOURTH CLAIM FOR RELIEF
## INTENTIONAL MISREPRESENTATION – FRAUD

53. Plaintiffs re-allege and incorporate paragraphs 1 through 52 of this Complaint.

54. In the Letter of Intent, Defendant Willis made a false representation of fact regarding his intent to purchase Plaintiffs' assets for $8.25 million in cash.

9

55. In fact, at the time he signed the Letter of Intent, Defendant Willis intended to obtain confidential information and use it to organize and operate a competing music festival.

56. Upon information and belief, Defendant Willis also did not have the financial ability to purchase the assets for $8.25 million in cash, as represented in the Letter of Intent.

57. The representations of fact made by Defendant Willis were untrue.

58. The untrue representations were made by Defendant Willis knowing the representations were untrue or recklessly without caring whether it was true or false.

59. Defendant Willis made the representations with the intent to deceive and induce Plaintiffs to act upon it to Plaintiffs' pecuniary damage.

60. Plaintiffs believed such representation to be true and relied on representations to their detriment.

61. Plaintiffs have suffered and continue to suffer pecuniary loss and damage as a result of Defendant's intentional misrepresentation.

## FIFTH CLAIM FOR RELIEF: NEGLIGENT MISREPRESENTATION

62. Plaintiffs incorporate and reallege paragraphs 1 through 61 of this Complaint.

63. Upon information and belief, Defendant Willis was negligent in making the representations identified in paragraphs 54 and 56 hereof.

64. Plaintiffs have suffered and continue to suffer pecuniary loss and harm as result of Defendant Willis' negligent misrepresentation.

## SIXTH CLAIM FOR RELIEF: VIOLATION OF 15 U.S.C. SECTION 1

65. Plaintiff's incorporate and reallege paragraphs 1 through 64 of this complaint.

66. Defendants' prices for tickets to their music events and/or admission to their music festivals are below an appropriate measure of their costs – they are being offered free of charge.

67. Defendants have a reasonable prospect and/or dangerous probability of recouping their investment in below-cost prices.

68. Defendants' conduct constitutes predatory pricing practices; a contract, combination, or conspiracy in restraint of trade; and concerted action in restraint of trade, all in violation of 15 U.S.C. §1

69. Plaintiffs have and will continue to suffer pecuniary loss and harm as a result of Defendants violation of 15 U.S.C. § 1.

70. Pursuant to 15 U.S.C. § 15, Plaintiffs are entitled to treble damages as a result of Defendants' conduct. Plaintiffs are also entitled to injunctive relief.

### SEVENTH CLAIM FOR RELIEF: VIOLATION OF 15 U.S.C. SECTION 2

71. Plaintiffs incorporate and reallege paragraphs 1 through 70 of this Complaint.

72. Defendants have engaged in anticompetitive conduct with a specific intent to monopolize the music industry market in country music festivals and rock music festivals in Colorado. Plaintiffs have and will continue to suffer pecuniary harm and loss as a result of Defendants' violation of 15 U.S.C. § 2.

73. Defendants conduct is an attempt to monopolize a market, in violation of 15 U.S.C. § 2.

74. Pursuant to 15 U.S.C. § 15, Plaintiffs are entitled to treble damages as a result of Defendants' conduct. Plaintiffs are also entitled to injunctive relief.

WHEREFORE, Plaintiffs respectfully request the following relief:

A. Temporary and permanent injunctive relief;

B. Compensatory damages;

C. Consequential damages;

D. Incidental damages;

E. Lost profits;

F. Punitive damages under Wis. Stats. § 895.043;

G. Punitive damages under Wis. Stats. §134.90;

H. All damages available under Wis. Stats. §134.90, including Plaintiffs' actual loss and/or Defendants' unjust enrichment;

I. Treble damages pursuant to 15 U.S.C. § 15;

J. Prejudgment interest pursuant to 15 U.S.C. § 15 (a);

K. Plaintiffs' attorney's fees, costs and disbursements incurred in this action;

L. Other such further relief as the Court deems appropriate.

**PLAINTIFFS REQUEST A JURY TRIAL**

Dated: February 11, 2011

BAKKE NORMAN, S.C.

By: _____
Peter M. Reinhardt
Attorney No. 1025187
2919 Schneider Avenue, P.O. Box 280
Menomonie, WI 54751
(715) 235-9016

Attorney for   Plaintiffs

**COLEMAN AND ROBINSON**, LLC
Joe Coleman
2454 Patterson, Suite 210
Grand Junction, CO 81505
(970) 242-3311
Attorney for Plaintiffs